**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ERIC ESTRADA VILLASENOR,**

          **Petitioner,**

**v.**

                                                   **Civil No. 2:26cv188**

**Jeffery Crawford, *ICA-Farmville
Detention Center,* et al.,**

          **Respondents.**

## MEMORANDUM ORDER

On February 25, 2026, Eric Estrada Villasenor ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. ECF No. 1. Federal Respondents were then instructed by this Court to either (1) file a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those addressed in Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026) and Ponce Vidal v. Crawford, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026); or (2) file an Opposition to the Petition discussing the material differences between these cases and the instant matter. ECF No. 4. On March 16, 2026, the Federal Respondents filed a Notice indicating that the factual and legal issues presented here do not materially differ from the Eastern District of Virginia cases cited above. ECF No. 6.

The above referenced cases address the proper interpretation and application of 8 U.S.C. § 1225 and § 1226. Historically, § 1225 was applied to noncitizens encountered at, or near, designated or undesignated border crossings, whereas § 1226 was applied to noncitizens otherwise found within the United States. In 2025, the government, first through an internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), announced a new interpretation of § 1225. According to this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found to be present anywhere in the United States are subject to mandatory detention without a bond hearing under § 1225(b), "rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." Ortega Miranda v. Bondi, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted); see Matter of Yajure Hurtado, 29 I.& N. Dec. 216 (BIA 2025).

Since this BIA decision, multiple judges of this Court, consistent with the weight of emerging caselaw, have rejected this new interpretation of § 1225. However, federal judges do not unanimously agree on the issue, as the divided panel of the Fifth Circuit recently demonstrated. Compare Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026) (explaining that even though the petitioners were not actively pursuing lawful admission when arrested, they were categorically "seeking admission" under

2

§ 1225(b)(2)(A) and therefore had no right to a § 1226(a) bond hearing); with id. at 509 (Douglas, J., dissenting) (reaching the contrary conclusion); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025) (indicating in a preliminary ruling that the government was "not likely to succeed on the merits of their argument that th[e] individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)").

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Consistent with this distinction, § 1225 was previously applied to noncitizens attempting to physically enter the United States, whereas § 1226 was applied to noncitizens who had successfully entered the United States (even if unlawfully).[1]

---

[1] Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 118-19 (2020) (explaining that the noncitizen in that case had no basis to challenge his "confinement during the pendency of [his] expedited asylum review" because it was undisputed "that he was apprehended in the very act of attempting to enter this country," meaning that mandatory detention was proper under

3

Examination of the interplay between § 1225 and § 1226 raises complex questions to which both sides of the dispute have presented multifaceted arguments that offer compelling reasoning.  However, this Court ultimately agrees with the emerging majority view, noting specifically its agreement with the constitutional analysis in Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court is yet to address"); see also Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border"); Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *7 (E.D. Pa. Nov. 25, 2025) ("[T]he canon of constitutional avoidance counsels against the government's interpretation [of § 1225]."); cf. Ortega Miranda, 2026 WL 287179, at *10 (finding that the petitioner's "continued detention without a bond hearing violates his right to procedural due process").

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

---

§ 1225(b)(1), further noting that "simply releasing him would not provide the right to stay in the country" because "[w]ithout a change in status, he would remain subject to arrest, detention, and removal" under § 1226(a)).

4

_Mathews v. Eldridge_, 424 U.S. 319, 333 (1976) (citation omitted). This right to be heard in a meaningful manner takes on even greater significance when physical detention is at stake, particularly when such detention routinely exceeds a year,[2] is civil in nature, and in the absence of a hearing, would be imposed regardless of whether the detainee has committed any statutorily disqualifying crimes or poses any risk of flight or danger to the public. _See_ _Zadvydas_, 533 U.S. at 690 ("Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects."); _Aroca_, 2026 WL 357872, at *18 ("The Supreme Court has emphasized that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" (quoting _Addington v. Texas_, 441 U.S. 418, 425 (1979))).

Accordingly, Petitioner's § 2241 Petition is **GRANTED, in part.** ECF No. 1. Respondents are **ORDERED** to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge **on or before April 1, 2026.** In line with due process requirements,

---

[2] Though the data is dated, it appears that removal proceedings that proceed through the appellate stage took more than 450 days as of 2015. _See_ _Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges_, Gov't Accountability Office, at 33, https://www.gao.gov/assets/690/685022.pdf (last visited Mar. 19, 2026); _see also_ EOIR 2025 Adjudication Statistics https://www.justice.gov/eoir/media/1344791/dl?inline (last visited Mar. 19, 2026) (indicating that the Executive Office for Immigration Review had less than 700,000 pending cases in 2015 but had approximately 3.8 million by 2025).

Petitioner is entitled to an opportunity to be heard in a meaningful manner at the bond hearing and to a ruling premised on his own case-specific circumstances. Cf. Mendez Trigueros v. Guadian, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a second § 1226(a) bond hearing that was "constitutionally compliant").

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter partial judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to Petitioner and to counsel for Respondents, and administratively close this action.[3]

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 20 , 2026

---

[3] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.